3:15-cv-00713-JFA     Date Filed 09/25/15     Entry Number 40     Page 1 of 11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| CECILE RUSSELL, as Personal Representative of the Estate of Kelsey Harris, deceased; WILLIAM P. PIPP, as Personal Representative of the Estate of Melinda Sue Pipp, deceased; and WENDY S. FUESS, as Personal Representative of the Estate of Billings S. Fuess, IV, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>Evelyn McGrath as Personal Representative of the Estate of BRIAN M. McGRATH and LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Defendants. | C/A No. 3:15-cv-00713-JFA<br><br><br><br>**ORDER** |

## I.   INTRODUCTION

This matter comes before the Court on the parties' cross motions for summary judgment. Plaintiff's decedents, Kelsey Harris, Melinda Sue Pipp, and Billings S. Fuess, IV, were killed in an automobile accident in Columbia, South Carolina on January 18, 2012. Plaintiffs seek to recover underinsured motorist ("UIM") coverage from Defendant Liberty Mutual Insurance Company ("Liberty") under an automobile insurance policy sold to Evelyn McGrath ("Evelyn"), the mother of Defendant Brian M. McGrath ("Brian").

The parties agree that the dispositive issue in this case is whether the policy is governed by Florida or South Carolina law. If Florida law governs the policy, Plaintiffs are entitled to nothing. If South Carolina law applies, Plaintiffs are entitled to $500,000.

The parties have fully briefed their motions, and on September 21, 2015, this Court heard oral arguments. For the reasons discussed below, this Court holds that the policy is governed by Florida law and that Plaintiffs are entitled to nothing further under the policy. Accordingly, Plaintiffs' Motion for Summary Judgment is denied, and Defendant's Motion for Summary Judgment is granted.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This lawsuit arises out of a tragic automobile accident that claimed the lives of four young adults in Columbia, South Carolina. On January 18, 2012, Brian was driving his 2006 Dodge sedan, insured by Liberty with Plaintiffs' decedents as his three passengers. Brian lost control of the vehicle and crashed. As a result, all four occupants died.

Brian began attending the University of South Carolina in August 2007. During his freshman year, he lived in the dormitory on campus without a vehicle. During the 2008/2009 school year, Brian lived in an apartment across from the campus with roommates. During the summer of 2009, he attended summer school at Queens College in New York and lived in Connecticut. During the 2009/2010 school year, Brian returned to Columbia and resided at the Woodlands apartments with roommates. During the summer of 2010, Brian again went north to attend summer school at Sacred Heart College in Fairfield, Connecticut where he lived at home.

During the 2010/2011 school year, his third year at USC, Brian lived at the Carolina Walk condominiums as a renter. During the summer of 2011, Brian worked in Connecticut as an intern

2

at a law firm and lived at home. During the 2011/2012 school year, as a senior, Brian continued to live at the Carolina Walk condominiums until his death on January 18, 2012. Brian would have graduated in May of 2012.

In late 2008, during Brian's sophomore year, his parents purchased a second home in Florida. At the time, they also purchased the Dodge sedan for Brian. They purchased the vehicle in Florida from a Florida dealer. The vehicle was registered in the state of Florida with a Florida license plate. Evelyn paid taxes on the vehicle in the state of Florida. The Liberty policy was sold to Evelyn, the named insured, through a Florida sales office for a vehicle primarily garaged in Florida. Liberty mailed the policy to Evelyn at her residence in Connecticut.

At the time of his death, Brian was a citizen of the state of Connecticut. His estate was probated there in the Fairfield Probate District. Brian's voter registration card was issued in the state of Connecticut. Brian was licensed to drive by the state of Connecticut. His parents paid out of state tuition to the University of South Carolina every semester he was there. Brian never owned property, paid taxes, nor was employed in the state of South Carolina. According to Evelyn, he planned to return home to Connecticut following the completion of his education.

The policy had liability limits of $250,000/$500,000. Liberty paid the limits in exchange for a covenant not to execute in favor of Brian, his estate, and Evelyn. Subsequently, Plaintiffs brought the present lawsuit setting forth three causes of action. The first two are for wrongful death and survival against Brian. The third is a declaratory judgment action seeking to reform the policy issued by Liberty to include UIM coverage. Relying on South Carolina law, Plaintiffs allege that no meaningful offer of UIM coverage was made, and thus, the policy must be reformed to include UIM coverage to the limits of the liability coverage.

### III.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991).

A fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson*, 477 U.S. 242 at 248. "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). While all facts and the reasonable inferences therefrom must be construed in the light most favorable to the nonmoving party, that party only creates a genuine issue of fact when it produces evidence that would create a reasonable probability, and not a mere possibility, of a jury finding in that party's favor. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 512 (4th Cir. 1993).

When considering cross-motions for summary judgment, the Court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir.2003). The Court must endeavor to resolve factual disputes and competing inferences in favor of the party opposing each motion. *Id.*

### IV.  DISCUSSION

The dispositive issue in this case, whether Plaintiffs are entitled to UIM coverage under the policy, hinges on whether South Carolina or Florida law governs. The parties agree that, if Florida law governs, Plaintiffs are entitled to nothing.

#### A.  *Choice of Law*

Defendants removed this case from South Carolina state court to this Court based on diversity jurisdiction set forth in 28 U.S.C. § 1332. Typically, in a diversity case, a district court applies the substantive law of the forum state to resolve a plaintiff's state law claims. *Erie Railroad v. Thompkins*, 304 U.S. 64 (1938); *Brown v. American Broadcasting Co.*, 704 F.2d 1296, 1299 (4th Cir. 1983). Federal courts sitting in diversity apply the forum state's choice of law rules. *Francis v. Allstate Inc. Co.*, 709 F.3d 363, 369 (4th Cir. 2013).

South Carolina choice of law principals encompass both the traditional *lex loci contractus* doctrine and S.C. Code Ann. § 38-61-10. Historically, South Carolina courts followed the rule of *lex loci contractus* and applied the law of the state where the application for insurance was made, the policy delivered, and the contract formed. *Unison Ins. Co. v. Hertz Rental Corp.*, 312 S.C. 549, 436 S.E.2d 182 (S.C. App. 1993).

The legislature modified this general rule by statute in 1947 – now codified as S.C. Code Ann. § 38-61-10. The statute provides that:

> All contracts of insurance on property, lives, or interests in this State are considered to be made in the State and all contracts of insurance the applications for which are taken within the State are considered to have been made within this State and are subject to the laws of this State.

S.C. Code Ann. § 38-61-10. "Where this statute applies, it governs as South Carolina's rule of conflicts." *Sangamo Weston, Inc. v. Nat'l Surety Corp.*, 414 S.E. 127, 130 (1992).

In *Sangamo*, the South Carolina Supreme Court considered the applicability of S.C. Code Ann. § 38–61–10 to an insurance contract. *Id*. At issue were insurance policies covering a South Carolina manufacturing facility that were executed outside of South Carolina by non-citizens of South Carolina. *Id*. The insured sought declaratory judgment to determine the scope of insurance coverage. *Id*. The *Sangamo* court first had to resolve "which state's law should be applied in interpreting these insurance contracts." *Id*. at 129. Critical to this determination was the fact that the insured "property" at issue—Sangamo's manufacturing facility—was permanently located in South Carolina. *Id*. at 130. The court held that insuring property, lives and interests in South Carolina constitutes a significant contact with this state. *Id*. at 131. Thus, the court applied § 38–61–10. *Id*.

Similarly, in *Heslin-Kim v. Cigna Group Ins.*, the court was asked to determine whether Georgia or South Carolina law governed a life insurance policy. 377 F. Supp 2d 527 (D.S.C. 2005). There, the insured, then a Georgia resident, purchased a life insurance policy in Georgia before relocating permanently to South Carolina. *Id*. The insured maintained his permanent residence in South Carolina for the next seven years prior to his death. *Id*. Additionally, he paid his premiums from South Carolina. *Id*. After his death, the insured's estate was probated in South Carolina. *Id*. Citing all of these facts, Judge Duffy held that § 38–61–10 was applicable to the policy because the "life" insured by the policy had a "permanent and definitive connection" to South Carolina. *Id*. at 532.

6

However, § 38-61-10 does not automatically supplant the traditional doctrine of *lex loci contractus* in every case. *See Bowman v. Continental Ins. Co.*, 229 F.3d 1141 (4th Cir. 2000)(unpublished opinion)(applying South Carolina law). Indeed, courts have often held that § 38–61–10 is inapplicable, noting "a lack of connection, interest or nexus to South Carolina," such that it could not be said that the "property, lives, or interests" insured were located in South Carolina. *See Cigna*, 377 F.Supp.2d. at 532; *see also Bowman*, 229 F.3d at *3 (finding that § 38–61–10 was not applicable to an insurance coverage dispute because at the time of the automobile accident the insured person and property were located in Georgia and the insured's sole connection with South Carolina was the automobile accident); *Yeager v. Maryland Casualty Co.*, 868 F.Supp. 141, 144 n. 5 (D.S.C. 1994)(finding that § 38–61–10 was not applicable to an insurance coverage dispute where there were no "interests" in South Carolina); *Unisun Ins. Co. v. Hertz Rental Co.*, 312 S.C. 549, 436 S.E.2d 182, 184 (S.C. 1993)(applying the rule of *lex loci contractus* after finding that § 38–61–10 was not applicable in a case where the property and interests insured were located outside of South Carolina at the time the contract was made).

The courts in both *Bowman* and *Maryland Casualty Co.* rejected § 38-61-10 in favor of the rule of *lex loci contractus*. In both cases, the only connection to South Carolina was that the automobile accident occurred there. *See Bowman*, 229 F.3d at *3; *Maryland Casualty Co.*, *supra*.

Likewise, in *Yeager v. Allstate Ins. Co.*, the court held that §38-61-10 was not applicable because of an insufficient connection to South Carolina. No. 9:09-860-MBS, 2010 WL 680429 at *5 (D. S.C. Feb. 23, 2010). There, a South Carolina accident triggered a Georgia automobile insurance policy. *Id*. Unlike *Bowman* and *Maryland Casualty Co.*, however, the insured in *Allstate* was tied to South Carolina by more than the mere accident. *Id*.

7

In that case, the insured was a Georgia resident with a Georgia driver's license driving a vehicle registered in Georgia. *Id.* at *1. However, she was living part-time with her boyfriend across the border in Beaufort County, South Carolina. *Id*. Further, she worked for clients in South Carolina as a book keeper and filed tax returns in both Georgia and South Carolina. *Id*. Indeed, at the time of the accident, she was traveling from a South Carolina client's place of business to her part-time South Carolina residence. *Id*.

In her opinion, Judge Seymour held that, despite the insured's ties to South Carolina, her connections lacked "the degree of permanency" sufficient to trigger the application of § 38-61-10. *Id*. at *5. While the connection was more than the mere situs of the accident, the court nevertheless distinguished the situation with cases where § 38-61-10 applied. *Id*.

Specifically, Judge Seymour contrasted both *Sangamo* where the property insured – a manufacturing facility – was permanently located in South Carolina and *Cigna* where the insured was a longtime permanent resident of South Carolina with the facts of that case. *Id*. Judge Seymour noted that while the insured was a part-time resident of South Carolina and paid income taxes there, she was a permanent resident of, licensed by and registered in the state of Georgia. Thus, her "connection to South Carolina [was] not significant enough to trigger application of § 38-61-10." *Id*. Accordingly, the court held § 38-61-10 was not applicable and instead, applied the rule of *lex loci contractus*, which dictated the use of Georgia law. *Id*. at *6.

The case at bar is directly analogous to the *Allstate* decision. Like the vehicle in *Allstate*, the Dodge sedan in this case was purchased, registered, and insured outside of South Carolina. Like *Allstate*, Brian used the vehicle in South Carolina where he was a living part of his time.

8

Similarly, in both cases, the insureds maintained permanent residences outside South Carolina. Finally, in both cases, the insured and driver were licensed by a state other than South Carolina.

Facts not shared by the two cases include that, in *Allstate*, the insured both found employment and filed income taxes in South Carolina – connections neither Brian nor his mother ever had. Further, neither Brian nor Evelyn were ever permanent residents of South Carolina. Rather, Brian was only here during his biannual semesters at the University. His transient status is demonstrated both by his summers spent either in school or working up north and the uncontroverted testimony of Evelyn that he had no intentions of remaining in South Carolina after graduation.

Conversely, the case at bar is readily distinguishable from both *Sangamo* and *Cigna*. In *Sangamo*, the property insured – a manufacturing facility – was a permanent fixture located on South Carolina soil. Equally, the life insured in *Cigna*, belonged to a person who maintained his permanent residence in South Carolina for seven years prior to his death. Here, the insured property, the Dodge sedan, was in South Carolina only as often as its driver attended the University during the fall and spring semesters. A Florida vehicle driven by a Connecticut citizen is fundamentally different than a South Carolina manufacturing facility or the life of a South Carolina citizen.

Finally, broad implications belie Plaintiffs' argument. If this Court were to find that South Carolina law governs the insurance policy in this case, then it must be willing to convert the automobile insurance policy of every out-of-state student at each of our in-state universities from a policy governed by the laws of their native states into a contract suddenly subject to the inimitable insurance laws of South Carolina. While not unsympathetic to the fact that such a conversion may

9

serve to protect the interests of South Carolina citizens – such as the three passengers killed in Brian's car that faithful night – this Court must nevertheless defer that decision to the South Carolina General Assembly.

Accordingly, this Court finds that Florida law governs the policy.

### B. *Florida Law*

In their briefings, the parties agree that if Florida law governs the policy then Plaintiffs are entitled to nothing. For following reasons, this Court agrees.

Under Florida law, UM/UIM coverage are analyzed under the same code section, and it is well settled that occupants of a vehicle who sustain bodily injury may not recover under both liability coverage and UM/UIM coverage. *See* § 627.727 FLA. STATUTE; *Tobin v. Michigan Mut. Ins. Co.*, 948 So.2d 692 (Fla. 2006), *see also Travelers Ins. Co. v. Warren*, 678 So.2d 324 (Fla. 1996); *Dooling v. Safeco Ins. Co. of IL*, 578 Fed.Appx. 954 (11th Cir. 2014)(unpublished decision)(referencing FL public policy in connection with the same exclusion found in the McGrath policy); *Small v. New Hampshire Indem. Co.*, 915 So.2d 714, 715 (5th D.C.A. 2005)(referencing FL public policy in connection with the same exclusion found in the McGrath policy); *see also Armstrong v. Allstate Ins. Co.*, 712 So.2d 788 (2nd D.C.A. 1998)(UM coverage denied to passenger based on FL public policy grounds with no specific reference to a policy exception or exclusion).

Here, Plaintiffs have already recovered the policy limits under the liability coverage of the McGrath policy. Therefore, they cannot also recover UIM benefits under this policy for this loss. Accordingly, Plaintiffs are entitled to nothing further from the policy.

## V.     CONCLUSION

It is hereby ordered that Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiffs' Motion for Summary Judgment is respectfully **DENIED**.

**IT IS SO ORDERED.**

September 25, 2015                                              Joseph F. Anderson, Jr.
Columbia, South Carolina                                    United States District Judge